It's settled, Mr. McElhaney. You can begin once we are finished shifting around here. Thank you, Judge Englehart, and may it please the Court, I'm Scott McElhaney here for Omni Court's judgment below is erroneous for several reasons. I want to focus on three of my opening remarks here today. This Court should reverse and render judgment for Omni for three particular reasons. First, the Title VII claim on which the judgment was based can't support the judgment because it's time-barred. Second, Omni proved its factor other than sex defense, and that this Court should also reverse and render. And third, the District Court reversibly erred when it declined and refused to enter judgment based on the jury's first verdict on the grounds that the District Court gave that it was inconsistent. The verdict was not inconsistent, and the Court had no power to order the jury to deliberate. I'd be happy to talk about anything else in the record or the briefing, but I'm going to focus on those three things, and I'll turn to the untimeliness issue first. The District Court erred when it refused to grant Omni's motion for judgment as a matter of law at the close of Ms. Lindsley's case-in-chief, at the close of all evidence, and when Omni renewed it after trial because of the untimeliness of the charge as compared to any pay discrimination. Lindsley had to prove that she was paid less than a predecessor in the Corpus Christi food and beverage director role, and she started in that role in July of 2011. By September of 2014, she was paid more than any of her three predecessor comparators were ever paid. As I understand it, though, she started out at the $57,000 range, which was less than the prior person in the position. It sounds like your argument is almost like an averaging that in the end it worked out to her benefit, so therefore we should overlook the facts as she's alleged them. Right. Well, that's not quite the facts. The $57,000 salary was her starting salary in the job prior to her director role. That was in an assistant director role that she started in, I believe, June of 2010. She gets promoted to the director role in July of 2011, and she goes up to around $70,000 a year there. That was lower than her comparators at the time, but that's July of 2011. In September of 2014, several years later, she passes the highest point at which any comparator ever reached, and that's October of 2015. Three hundred days before that date is December 31st of 2014, months after the point at which she's paid more than any of her comparators were ever paid. Was that the breakdown in the dates that the district court used? The district court used December 31st in one of its issues to the jury charge, and there were two stipulations about charge filing, broadly speaking. There was the stipulation of the parties that the December 31st. This court has typically, I believe, with the Taylor case, looked at EEOC charge receipt as the date the EEOC received the charge to count back the three hundred days. The parties also stipulated that Ms. Lindsley filed her charge on September 23rd of 2015. Now, that may be when she sent it in, but the stipulations are what the stipulations are. In this case, it doesn't matter. But what matters, I guess, is when did Omni raise this defense? Well, Omni raised the defense for the first time in its summary judgment motion after remand from this court. OK, but so basically you go through the first initial round of summary judgment. Yes. Granted. Correct. Appealed. Yes. This court says reversed because there's a prima facie case, sends it back. Yes. And what the district court says, summary judgment round two, you waived it, you forfeited it. Actually, it's what the district court said. It's forfeited. And basically what the Fifth Circuit had done, this court had remanded it for a determination from the prima facie case forward. So how is the district court's finding that you waited too late in abuse of discretion? It's legally wrong. First of all, how is it legally wrong? Because if you look at the entire procedural history, if I may, Your Honor, Omni pleaded untimeliness in its answer. That's at 676 of the record. It did not raise untimeliness in its first summary judgment motion. But there's a reason why. Omni did not know who the comparators to which Lindsay would compare herself were. It didn't know. It didn't have grounds to raise untimeliness in that summary judgment motion. The district court granted the motion on the grounds that Omni raised, which were, as to the immediate predecessor, that he had better experience and the like, more substantive elements. Then the case comes up here. The court reverses on those other substantive elements. And there's a mandate from this court that says that, but the mandate only applies to things expressly or impliedly decided. It was all about the plaintiff's prima facie case. Right. Basically, what we said was there are comparators and the comparators did exactly the same thing the plaintiff did, but got paid more. Correct. Correct. But this court made no comment one way or another about when those comparators were paid more or less, because timeliness was never raised. Let's talk about comments one way or the other. You said Omni raised the timeliness defense in its responsive pleading. Correct. What did it say about the 300 days or anything else? It's on it's on paragraph two of page 676 of the record. I believe it said that I can't really express words, but that's the paragraph in which the there's a standard defense that's often in these pleadings. That's what I'm getting at. Is this boilerplate that I would have put in my answers when I was a defense lawyer? And does it actually elucidate why it's late and why it fails under the Title seven or EEOC regulations? I think it gives fair notice. It certainly gives fair notice of the defense that any charge was untimely compared to the pay discrimination that occurred, because the pay discrimination stopped as to the three comparators who we ended up with. Now, here, what this court held in the prior appeal only related to as to the immediate predecessor, whether there is a fact issue as to whether the reason for the pay disparity was pretext as to the prior two comparators, and whether there was a it was on the more substantive issue of whether or not the jobs were comparable. We hadn't raised timeliness. It wasn't discussed. And under the mandate rule, certainly the issue of timeliness was not expressly decided. And under the mandate rule, it wasn't impliedly decided. Well, we wouldn't have decided it because it just wasn't raised as an issue. And I guess was the district court's point, you should have raised this in your first summary judgment motion. I mean, does that go to the prima facie case? Also, or is it just you can make another summary judgment motion later on when you decide to do it under the there's no rule that says you have to raise all your defenses in your first summary judgment motion. In fact, this case, Alpha versus this court's Alpha versus Omega case was expressly a case where there was a summary judgment granted on one ground. This court reversed. And then the district court out in remand granted some regions on another ground. And there was in this court held, that's totally fine. That was not a violation of the mandate rule. The mandate rule didn't, you know, this court's mandate from the first appeal does not affect the ability of Omni to raise the timeliness issue, which it had pleaded. It was there, it remained to be decided. You're given notice from the initial pleading. Correct. And the pretrial order. It was in the pretrial order as well. The pretrial order, we're talking about round two or pre? No, this is the pretrial before the trial. It's a record. I'm saying before it came up here or after. I'm sorry, I didn't catch the question. It would be after it came up here and we remanded it. Correct, correct. We raised the issue in the second summary judgment motion after remand. And Judge Starr said it was waived. What we preserve the preserve the point by putting it in the pretrial order and then raised it at trial in the Rule 50 motion. Again, this is the converse is like the flip side of the Supreme Court's Dupree case from last year. When Judge Barrett talked about the interplay between Rule 56 and Rule 50, it is basically the bottom line is there's no rule and procedure that requires a party to raise an issue on a Rule 56 motion on pain of not being able to raise it at trial on a Rule 50 motion. And as I talked about earlier, the the intermediate appeal in this court to this court doesn't change that because the mandate rule just simply doesn't apply to this particular issue because your honor. The prima facie case was part of what this court decided, but there are particular elements of the prima facie case, and those elements had nothing to do with timeliness in this case, which is why the mandate rule doesn't forbid Omni from bringing up this issue at the time that did it, but can't you effectively abandoned an affirmative defense by not pressing it soon enough? I mean, it's an abstract matter. You can you can. If you don't put it in the pretrial order and the pretrial order sets out all the legal issues that are going to be, that's a possibility, but it was in the pretrial order here. We didn't abandon it. In fact, quite the opposite. We tried to bring it up in summary judgment after remand from this court. We believe the district court erroneously said it was it was it was waived. We brought it up again in the pretrial order. We brought it up again at the motion for judgment as a matter of law stage. And then again, at post trial. Well, let's let's go back to the to the second summary judgment order that says, well, you didn't timely raise this. Correct. Tell me again how that's an error of law as opposed to an exercise of the district court's discretion. It's an error of law because the district court based that ruling on an application of the mandate rule, but that was erroneous because this court's mandate from the prior appeal had nothing to do with timeliness because it simply hadn't been raised because I didn't know what the who the comparators were such that it could be able to raise it. It wasn't, you know, in a way it wasn't right to bring up because we didn't know who Ms. Lindsay would compare herself to. Well, the district court didn't say anything about the mandate rule. The district court said effectively you didn't raise it timely. Well, that's but then then there's even less to the district court's ruling because there's no rule of procedure that says if you don't raise something in a summary judgment motion the first time around, you can't raise it again, especially or at that point we hadn't reached trial. And there's certainly nothing in rule 50 that says if you don't raise an argument in a rule 56 motion before trial, you can't raise the argument when you're at the motion for judgment as a matter of law stage at trial. Well, when the court the court drops footnote seven in its ruling in this regard and says when you fail to pursue a claim or defense beyond your initial argument waived, I mean, it cites some law on that. So your position is you could tarry as long as you wanted, as long as you did it before trial or you did it, you know, when you did it. Right. I think, like I said, as an abstract matter, it's possible to abandon something. But typically I think you may only find that if you abandon it in the pretrial order or something like that. That's not something that did in this case. So I think we have I don't think there's anything to the forfeiture argument and the timeliness issue was there brought up to the district court on the motion for judgment, a lot of motion, excuse me, motion for judgment as a matter of law stage and should have been granted. And that disposes of this case as a matter of law and obviates any need for this court to get in to the jury's verdicts. And if I could pivot to the jury's verdict, the jury found that Omni proved its factor other than sex defense. Now, that's a. In fact, that is a defense that's codified in the Equal Pay Act, but the Bennett Amendment to Title seven makes that defense applicable to sex based pay discrimination cases under Title seven. Here, the jury made a finding that Omni proved its factor other than sex defense. And here the claim under Title seven and the EPA were identical. They both concerned Ms. Lindsley's job is the director of food and beverage. And they both they both had to do with the three comparators that who were her predecessors in the in that role. They were they were based on precisely the same facts. And even my friend says in his response brief that he acknowledges that the two claims are based on the same facts. So the finding jury finding made on the on the factor of the sex offense equally applies to the Title seven claim and should have led the district court to enter judgment for Omni. We raised this post trial and again in the rule fifty nine motion. The district court never even commented on it. Didn't rule on it whatsoever. That was error. We believe it should have been, you know, judgment is a matter of law for Omni based on the untimeliness of the claim. But if you get to the jury's verdict, the first thing you're going to notice is Omni pleaded the excuse me. Oh, I pleaded the factor other than sex defense, put it in the pretrial order, proved that at trial and under the Bennett Amendment, it applies to the title seven claim. And the time I have left, I would I'll bring up the the issue about the court erroneously refusing to accept the jury's initial verdict, because here the court's aware of the jury's initial findings. You had no for liability under Title seven, no lost wages or damages, which has a substantive component here, because that's the only place that time limits were put into the jury charge. And yes, as the EPA, there were free floating emotional stress, distress and punitive damages findings. But this court's Nimick versus Dick Evans case holds that free floating damages awards don't make consistent liability findings inconsistent. And Judge Clement, your opinion in the team contractors versus Waypoint Nova case holds that it's reversible error to require a new trial or not accept a jury liability points. Is your opinion joined by Judge Higginson, which I think made it makes a majority, although just how it was also on the panel. It's made for two majority opinions, perhaps. I see I'm hit my red light, so I'll go ahead and finish up and reserve my time for rebuttal. All right. Thank you, counsel. You have five minutes for rebuttal. And we'll hear from Mr. Elwanger now. Good afternoon, your honors. Jay Elwanger on behalf of Plaintiff Linsley. Ms. Linsley filed her, as we just heard, a claim of discrimination with the EEOC back in September of 2015, as is obviously evident, this case has been extensively litigated up to this court and back and what Omni is now appealing is a twenty five point one million dollar jury verdict on behalf of Ms. Linsley. And although there were a half a dozen or so issues of appeal raised in the briefing, counsel has narrowed that to three to focus on today with the court. The first one that counsel raised was whether or not the Title seven claim was time barred. And as your honors have pointed out, there have been multiple bites at the apple where that issue could have been litigated and it was not. But where's your case that says. They had to raise it on their first summary judgment motion, your honor. Well, first of all, we don't we don't have a separate case that we've put before the court, your honor, because the district court was clear on why that was why he ruled the way he did. And more importantly, counsel just said one of the things in order to rely upon whether or not there was an abuse of discretion is to look at what was the entire record before the court when he made that decision. And in this case, part of that entire record was two things that I want to point out to the court. Well, he said the court got it wrong as a matter of law. First question, question zero. Do you agree that it was preserved in the answer? We don't agree that it was preserved in by filing the answer to the original litigation and then and then bringing it up for the first time. What was it raised in the answer? Was the defense of timeliness raised? It was raised, as your honor put it, as a laundry list of boilerplate objections or excuse me, affirmative defenses. It was not raised with any specificity, nor was it brought up in front of the trial court. What was brought up in front of the trial court were several instances which could lead to the trial court finding in our favor on this issue. For example, there is a conflating of the Equal Pay Act requirements along with Title seven. On the Title seven side, which is where this comes in, the EEOC had this before them and they look at issues of timeliness all the time in their charges and they found in Ms. Lindsley's favor through a series of evidentiary issues in the court. The letter of determination from the EEOC finding in Ms. Lindsley's favor was admitted into evidence and was before the jury and was before the court. Obviously, there's a scintilla of evidence there that the court could rely upon to say that the federal agency charged with first determining whether or not the claim was timely found that it was. That's the first point. The second point is that was there any determination in that letter that the claims were timely? I think I have to answer that in the negative, Your Honor, in that if the claims were not timely, they wouldn't have been able to issue the rest of the letter. So it's implied, absolutely implied. Yes, Your Honor. Secondarily, what we're seeing here throughout the briefing and throughout Omni's view on the EPA versus Title 7 is this conflating of the two and the misunderstanding of where, at least I believe, the jury was able to find in the plaintiff's favor in the way that they were, and that is this idea that you have. Let's go back to this. The timeliness issue is kind of the whole game, because if we disagree with the district court, find that it's preserved, it appears to be meritorious. I mean, maybe you dispute that. But I mean, we're talking about reverse and render versus some other disposition. So let let me just ask a couple more questions about that. So basically, if I understand the theory, because the issue was not raised in the first motion for summary judgment, that's when Omni forfeited the issue, the defense of timeliness. Is that correct? Yes. OK, so where's your law that says you've got to you've got to raise that timeliness defense in your first dispositive motion? While that is our position, your honor, we don't believe that that is the only reason why that defense fails. We're going to get there. But where's your law that says that's right, that at that moment they waived the defense or forfeited it? Other than the rules cited by the court in their opinion, your honor, we don't have separate authority. The rules cited by which court in which opinion? Judge Starr in the renewed summary judgment. I'm talking about the first one. I mean, it wasn't addressed is my point, correct? Yes, your honor. All right. Well, so let's move forward, comes up to the Fifth Circuit and the Fifth Circuit says no plaintiff asserted a prima facie case remand. Right. Yes. What part of the so I'm taking it that your second ground for saying this defense fails is mandate rule. Well, the mandate rule, but also the different standards at play between the Equal Pay Act and the Title seven act by putting I'm just talking about timeliness, this 300 day window, correct? Yes. So what in our mandate or in our opinion would have caused Omni to be prevented from raising this after remand? I don't believe that was separately addressed, your honor. OK, so does our mandate militate one way or the other on whether this defense could be raised post remand? We don't dispute the district court's opinion that it cannot be raised here. Your honor, we don't have separate authority to present to the court on that all right, because the district court you talk about second summary judgment. Now, here we are post remand district court doesn't mention the mandate. The district court just says you forfeited the argument by failing to raise the issue in your first motion for summary judgment and basically cites you failed to pursue pursue the claim and therefore passed your initial pleading and therefore it's abandoned. Right. That is an opinion. Yes. So if the court is wrong on that law. How does this stand then? Does the defense then retain its viability? Whether or not the defense maintains its viability does not mean that it was it is meritorious and how Omni is arguing it to the court now, we dispute that this wasn't timely brought. We dispute that the time periods that were brought up by the court and brought on at the time as it relates to the wage claims, we dispute that that wasn't timely. What is the instance of wage discrimination, pay discrimination within the 300 days prior to the EEOC receiving the complaint? It was it was raised by Judge Englehart in the initial argument a minute ago, and that is that there was more than a scintilla of evidence upon which the jury could find and in fact did find in plaintiff's favor on the theory that the pay that she's the pay dispute, the pay discrepancy that she had during that time period was based upon the lower pay that she started with. The fact that she outperformed her comparators under the EPA and by Title seven standards, she was damaged even. So who are the comparators within that 300 day period? But within the 300 day period, the comparators, you still have to trace back to Mr. Cornelius, Mr. Walker, Mr. Pollard. But she was making more money than they were at any time, correct? Only because she was able to vault ahead of them after a period of time, although she was artificially had her wages depressed earlier and that is through. Is she her own comparator? I mean, the theory is, if I understand it, I would have made more if you'd started me at the fair level you should have started me at. Correct. Stipulate that's correct, correct. But if she's making more than her comparators, objective comparators otherwise did, can she be her own comparator? First of all, I think you still are able to go back to the fact that she was artificially depressed prior to that, but I guess what I'm struggling with is how does this not completely blow up the statute of limitations? Because every pay every paycheck going forward then for the next 20 years could be the basis for a claim. It doesn't, Your Honor, because under Title seven back pay is not the only measure of damages and it's not the only way to find liability. She has to suffer an element or an instance of discrimination within that 300 days. She does. And because the mental anguish and the the compensatory damages that were inflicted upon her by that original pay discrepancy carried forward into the 300 days, that's how the EEOC was able to find in her favor. It's how the jury was able to find in her favor. It's how the district court was able to deny the post judgment motions. It's because that is an element of damage just under the congressional mandate. It's back pay, but it's also punitive damages. It's also compensatory damages. And the jury found in favor of the plaintiff in both of those by artificially reading into a statute words that aren't there, that you have to find the pay element only in order to find liability under Title seven. The court would be going beyond the mandate set by Congress when it enacted Title seven and to get into further argument about the Bennett Amendment and bootstrapping that and it goes beyond what is in the statute. The statute says you have to in order to be discriminated against under Title seven, you can suffer back pay damages, you can suffer compensatory damages, and the jury can also award punitive damages. Here, the jury did find in two of those three areas. And this court has found that you don't have to have compensatory damages in or excuse me, actual damages in order to support both compensatory and punitive damages as found in the Abner case. So the underlying premise is what I have an issue or what we have an issue with your honor. The underlying premise that because within that 300 day period on pay, we don't have compared or that somehow that blows up the entire verdict. It doesn't. If you just look at the plain language of the statute. So if we find that the district court improperly ruled that this defense had been abandoned, do we remand this for further determination or can we render? You cannot render your honor. And frankly, we would also argue that you shouldn't remand. I mean, the jury, the idea of replacing the defense, if the defense was never litigated, we have to do one or the other. Right. We disagree with that, your honor. I mean, the defense, the defense was present. If we find if you find that the defense was present and that this 300 day limitation was there, it doesn't obviate the jury's finding that there was still a violation of Title seven. The jury did find that the Bennett or that the Equal Pay Act was not violated because of that affirmative defense. But what they didn't do and what the court didn't do and what Omni waived was to place that same affirmative defense under Title seven. So when the jury found that there was a Title seven violation, they were able to do so consistently with what was rendered. They were able to do so because they found that Ms. Lindsley had suffered mental anguish to the tune of one hundred thousand dollars. And not only did they find that she suffered mental anguish, but they also found that it was so extreme and that the conduct of Omni was so extreme that it warranted a twenty five million dollar punitive damage award. The second argument raised by counsel was that Omni proved it's other than sex defense. And that's again requires the same nuanced argument that we just discussed about Title seven versus the EPA, because what Omni is trying to do here is bootstrap the fact that you can use EPA affirmative defenses in a Title seven claim. And yes, the Bennett Amendment is 60 years old and it says you can do that. But there wasn't a single case pointed to by Omni in their briefing that says you can do that after the fact without ever presenting that affirmative defense to the jury. If you look at the verdict form, there's never an affirmative defense inserted under Title seven about whether or not Omni was able to prove it's affirmative defense. There was under the Equal Pay Act, and that's why there's no verdict in this case under Equal Pay Act. But there is under Title seven. And even though the multiple cases cited in our briefing show, even though there were zero dollars awarded for back pay, that under Fifth Circuit authority does not change the fact that you still can have Title seven liability. And that's what the jury found here, precisely because of the actions that Omni had taken in this case. For example, one of the issues that I think resonated with the jury was the fact that there were no good faith efforts to comply with Title seven by Omni while Ms. Lindsley was there. There was testimony before the jury from the human resources director at the hotel in Corpus Christi that they had no training specific to discrimination, that there was no formal training regarding equal employment. The C-level executive for human resources from corporate testified that they never analyzed any pay disparity issues, that they never analyzed whether there was pay disparity in Corpus Christi or throughout the entire Omni hotel chain. They never analyzed whether there was sex discrimination hiring. And in fact, when the plaintiff even complained to human resources, they never investigated that either. So there was sufficient evidence upon which a reasonable jury could find in the plaintiff's favor on those issues of whether or not compensatory damages and punitive damages could be awarded. And I think that what would perhaps the most important piece of evidence on this point was, in fact, you know, an agreement from Omni's counsel during the trial. During the trial, they recognized that compensatory damages are broader than the and the window of time during which you can look at compensatory damages are broader than the back pay window that we agreed to during trial. We agreed to that. That was a stipulation we entered into because we knew that this case wasn't going to come down to back pay. It was going to come down to the punitive damages at issue here, as would be the case in any case where you might have a lower wage worker where the back pay isn't going to be a sizable part of any verdict. And here Omni's trial counsel, not my friend here, but their trial counsel said. So in other words, plaintiff is not seeking any lost wages from this time. But you're saying, hey, I'm still suffering mentally and emotionally from this. That was during cross-examination of the plaintiff. So even during the trial, there was this acknowledgment that there is a separation under Title seven between back pay damages and compensatory damages, and even under cross-examination acknowledged in front of the jury, there is a difference. And that even though they weren't seeking lost wages from a specific time period, their weight that the plaintiff was still seeking compensatory damages because she had suffered mental and emotional damages. There was also some discussion about whether or not in the briefing about whether or not the compensatory and damage awards were excessive. I think it's important to point out the Williams case from this court in 2000, where an exact amount of one hundred thousand dollars was upheld on a compensatory damage award just based on sleep loss and weight loss. Here we have much, much more extreme damage that Ms. Punitive damages were excessive. You know, we still have damage caps from 1991 that affect Title seven cases. And here the district court implemented those damage caps and cut the punitive damage award by ninety eight percent. So the idea that that two percent of what the jury found so inflammatory about the testimony that they patiently listened to should somehow be further cut, I think, obviates the entire theory behind Title seven and the fact that it allows for punitive damages to avoid these exact situations. The Fifth Circuit, the standard of review that was brought up, I believe the Bro brothers case was brought up earlier, had some really instructive language that we began a briefing with. And I want to raise before I leave myself open for any additional questions. First, it says we are not to tamper lightly with the considered judgment of those drawn together at one point to render judgment that is representative of the good common sense of the American people. It goes without saying that few institutions are as venerable as that of a trial by jury enshrined at the founding of the Bill of Rights and held by an enormous body of English and American law that commands judges who are officials, the least accountable to the people, not to invade the province of the judgment of the people. In this particular case, the people spoke very loudly that they believe that what happened to Ms. Lindsley was reprehensible and that they rendered their judgment without any suggestion and closing argument by me as to what that number should be. The jury came up with the idea that Ms. Lindsley suffered one hundred thousand dollars in compensatory damages and twenty five million dollars in punitive damages. And the fact that they put a zero in the back pay portion of the verdict form isn't a sign of weakness, isn't a sign of their misunderstanding or misapplying the law. In fact, it's the opposite. It's them looking very carefully at that window of time where they could award back pay based on a comparator and realizing, no, that's not what this case is about. This case, dating back to twenty fifteen and earlier, this case is about someone who had their wages artificially suppressed throughout their career and as a result of that. Suffered mental and emotional harm, and that alone under Title seven and under Fifth Circuit authority, that alone is enough to sustain the jury's verdict. Judge Ho in the first appeal of this matter said that equality of opportunity is fundamental to who we are and to who we aspire to be as a nation, our commitment to this ideal is deeply ingrained in our Constitution and what we do not accept are pay disparities due to race or sex. That's exactly what we have here. Unless the court has any further questions, I'll yield my time. Thank you, counsel. Rebuttal. Thank you, Your Honor, I just want to make a few brief points just to underscore a couple of things that came up in my friend's presentation. As to the waiver issue of the timeliness issue, I just want to reiterate the point that Omni didn't know who the comparators would be. Therefore, it had a good reason for not raising timeliness in its initial pre first appeal summary judgment motion. That's in the first summary judgment motion is in this court's record. It's part of the sealed record, but it's at ECF seventy three and seventy four. And going back to the point, if the district court didn't rely on the mandate rule, there's even less for basis to the district court's notion that Omni somehow waives this defense because again, there's no rule that requires raising of a defense in an initial summary judgment motion, I recall the district court's opinion on the second summary judgment motion. It's in a footnote, I believe. And I think the district court may have cited another district court case for the proposition that it's possible to abandon some defenses, but I don't think we have that situation here when Omni raised it in the pretrial order to preserve it, raised it again at trial as it did. So ultimately, we're at the point where we are at a point where the untimeliness issue is preserved. It is a valid defense and it ends the case as a matter of law. Well, speak to counsel's argument that, OK, so the timeliness defense is preserved. It doesn't preclude timely claims for mental anguish, for emotional harm, for the suffering she went through during the 300 day period because of what happened before. Right. But remember, you have to remember, there's a very specific claim that went to the jury. It was not was Ms. Lindsley discriminated against question mark. It was not even was Ms. Lindsley discriminated against in her pay question mark. It was was Ms. Lindsley discriminated against in her pay as to as compared to her three predecessors. That's the specific type of. Pay discrimination claim you have here, it was not that that phrasing of the verdict question was not objected to by my friend and Lindsley of the trial court below. That's the claim that's presented here. So you can't look to mental anguish damages unless you have a basis for a finding that was there was pay discrimination as to her three comparators. And after she surpassed what any of those comparators ever made, any potential pay discrimination under Title seven, based on the comparison that went to the jury, it ended as a matter of law. Now, my friend makes some arguments that Ms. Lindsley was in that position longer or or started off at a lower rate. Those might in different types of pay discrimination claims, those may be possible. But pay discrimination is one of those types of claims. They have to be very careful as to the context in which it arises. And here we have a very specific pay discrimination claim. It's the comparative claim as to her three male predecessors in the food and beverage director role at the Corpus Christi. But she was paid less than they were. I'm sorry. Did they get the same percentage raise? The raises seem to vary. If anything, this Lindsley was because she did start off behind, got out of cycle raises, raises every six months instead of every year and above normal raises. So I have a chart in my opening brief that sets out how they how they progressed in their in their salaries. And you'll see Ms. Lindsley does start from below, but she quickly catches up and then surpasses. And because of the nature of the claim, simply a comparative claim, looking only at her three predecessors, once she passed them, given the claim that went to the jury and the jury instructions, there's no more possibility of of of discrimination finding so long was her was her pay below them. Like what period of time? I guess it would have been below from when she started in July of 11 through September of 2014. And from 14 through her resignation and I believe 16, she was higher and she got much higher than than the her her predecessors. Only three years where she was lower. Correct. She was low. But then the important point is that she was lower. The only time she was lower was farther back in the past than 300 days before she filed her charge. So she can't go. So under the charge filing rules of Title seven and the 300 day period you have in Texas because it's a deferral state, you can't look back any further if she was a script. If if if her pay was lower in the 300 days, then she could possibly look back further. That's the Ledbetter Act. But she wasn't in the 300 days. I like in my five seconds left, I'll talk about her. I'll talk about Mr. My friend refers to the Abner case. I briefed this pretty extensively in the opening brief. It simply is not the case. Abner involved a situation where you had a hostile environment claim and all the predicates for liability were established. There were severe and pervasive conduct. The employer was liable. And that situation, even though the plaintiffs didn't reach a level at which they had compensable emotional stress damages, punitive damages were available. That's not what you have here because you don't have liability for pay discrimination in the first place. OK, counsel. Thank you very much. We appreciate the briefing and the remarks you've made here today. The case will be deemed submitted.